UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

THOMAS SENTEMENTES,          :
     Plaintiff,           :
                                :
v.                             :     3:20cv580 (MPS)
                                :
TOWN OF BETHEL, et al.,        :
     Defendants.         :

**INITIAL REVIEW ORDER**

The plaintiff, Thomas Sentementes, an unsentenced[1] inmate currently housed in the

Bridgeport Correctional Center ("BCC") of the Connecticut Department of Correction

("DOC"),[2] asserts this action under 42 U.S.C § 1983, alleging violations of his federal

constitutional and statutory rights and several claims under state law. Compl., ECF No. 1.

Specifically, he names the following defendants: Town of Bethel; Governor Ned Lamont; Public

Defender Thomas Leaf; BCC Warden Robert Martin; Bethel First Selectman John Doe;

Pasqualina Bastone; Bethel Police Chief John Doe, Police Corporal Zor, Police Sergeant Rost,

Police Officer Emerson, Police Officer Jason Broad, Bethel Police Officer James Christos,

---

[1] The DOC website reflects that he is currently unsentenced for criminal violation of a protective order. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=250887.

[2] The court takes judicial notice of the state criminal dockets showing that Sentementes has two criminal cases pending in state court for criminal violation of a protective order on the dates of February 5, 2019 and January 22, 2020, respectively. *See* https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=95c9d524-7c2c-47fc-9afd-77b46b0c9900 https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=e0dd3049-9c3f-4774-bb50-a638aa8ba887

Bethel Police Sergeant Christos, and Bethel Police Officer Dan Spinella (the "Bethel Police Defendants"); Danbury Hospital Director John Doe; Dispatcher Katie Kavallines; Liberty Mutual CEO David Long; Daniel Sentementes; and Bank of America CEO John Doe.[3]

Sentementes has filed a motion to implead (which the court construes as a motion to amend to join parties) to add claims against the Town of Danbury, Danbury Mayor Boughton, Danbury Police Chief John Doe, and Detective Labonia ("Danbury Defendants"). ECF No. 12. As the complaint in this action has yet to be served, the court will grant the motion to add these parties as a matter of course and consider whether Sentementes can allege plausible claims against these defendants on this initial review.[4] Sentementes seeks damages in the amount of $595,000,000.

For the reasons that follow, the court concludes that the complaint must be dismissed.

## I.      STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

---

[3] Sentementes is proceeding *in forma pauperis*.

[4] Rule 15(a) of the Federal Rules of Civil Procedure provides that a party "may amend its pleading once as a matter of course 21 days after serving" the complaint. Fed. R. Civ. P. 15(a)(1).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—to make the claim plausible. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.    FACTUAL BACKGROUND

To the best of its ability, the court discerns the following factual background from Sentementes's allegations. ECF No. 1.

Sentementes and his former partner, Pasqualina Bastone, entered into a partnership, LLC Bastone Investments, which included several businesses, including Bethel Wine and Spirits, Lina's Wine and Spirits, and Magia Bene Pizzeria. *Id.* at 5.

On January 22, 2019, his son Andrew informed him that Bastone had made an insurance fraud claim about an employee theft at Bethel Wine and Spirits to Liberty Mutual. *Id.*

On the evening of January 23, 2019, he confronted Bastone and other co-conspirators about this issue, and Bastone called the Redding Police Department. *Id.* at 6. When the Redding police responded at Lina's Wine and Spirits, they informed Bastone that she could file for an ex parte restraining order. *Id.*

Bastone then made a telephone call that was first received by Katie Kavallines, a dispatcher for the Bethel Police Department. Bastone subsequently made a complaint (allegedly false) to the Bethel Police that Sentementes had thrown bottles around Bethel Wine and Spirits. *Id.*

Sentementes alleges that he had stopped by Bethel Wine and Spirits to take care of some management issues; after he left, he had to return immediately because he had forgotten his glasses. *Id.* Upon his return to the store, Bethel Police Officers cornered him behind the counter. *Id.* Bastone later arrived, and Sentementes threatened that he wanted all of his assets returned to him. *Id.* at 6-7. Sentementes later agreed with the Bethel Police request to go to the Danbury Hospital Psychiatric Ward. *Id.*

On January 25, 2019, the Bethel Police Department sought a warrant for violation of a protective order and threatening in the second degree. *Id.* at 4.

On January 28, 2019, Sentementes's son Andrew made an allegedly false complaint to the Bethel Police Department as he had allegedly conspired with Bastone.[5] *Id.* at 7. Andrew made numerous phone calls to Sentementes's friend, Sid Weston, for him not to pick Sentementes up from the hospital. *Id.*

On that same day, Bastone had Sentementes served with an ex parte restraining order. *Id.* Sentementes was subsequently incarcerated for violation of that restraining order due to the actions of Bastone and Andrew Sentementes. *Id.*

On February 11, 2019, Sentementes was arrested for assault on a public safety officer and operating a motor vehicle under a suspended license; the Danbury State's Attorney also added

---

[5] The court notes that a Bethel Police Incident Report attached to the complaint indicates that Andrew Sentementes called the Bethel Police Department on January 25, 2019. *Id.* at 83.

criminal mischief. *Id.* at 6-7. Sementes's complaint indicates that he was arrested pursuant to a warrant. *Id.* at 4, 61.

Sementes was incarcerated for a year but could have posted bond and hired an attorney if Daniel Sementes had honored his mother's wishes and given Sementes his $20,000 in inheritance. *Id.* at 7. (Sementes does not specify if or how he is related to Daniel Sementes.)

During his incarceration, Sementes repeatedly contacted Bank of America to access his bank account so that he could post bond, but he was ignored by the bank. *Id.* at 8. After Sementes gave power of attorney to Francis Larson, Larson went to Bank of America and was informed that someone was withdrawing money each month from Sementes's social security disability check. *Id.* at 8-9. On March 3, 2020, this withdrawal started again but the bank refused to investigate. *Id.* at 8.

Although Sementes had been represented by Public Defender Leaf, Sementes asked the state court judge to allow Sementes to proceed on his own and have Leaf act as standby counsel. *Id.* at 9. Sementes had been unable to have Leaf take action to preserve surveillance videos and the exculpatory evidence was erased; Sementes asked Leaf whether he was going to represent him to the best of his abilities. *Id.* Leaf responded with an expletive. *Id.*

Judge D'Andrea, who presided over three of Sementes's criminal trials stemming from Bastone's accusations about Sementes, put in the mittimus that Sementes should be provided with law book, paper, pens, envelopes, and access to standby counsel. *Id.* at 9. Thereafter, BCC Warden Martin denied Sementes his right to access legal law books. *Id.* at 10.

Sentementes "filed for" a subpoena for the video tape of January 23, 2019 from Danbury Hospital Pyschiatric Ward, but the Hospital claimed that the videos were on a thirty-day loop and recorded over. *Id.* at 10.

On January 4, 2020,[6] Sentementes, proceeding *pro se*, showed at trial that Bethel Police Department had provided false and perjured testimony. ECF No. 1 at 8. Some of the false testimony came from Police Officer Emerson, who had testified that he had only met Sentementes twice in the two years prior; Sentementes produced evidence that Officer Emerson had arrested him three times between January 23 and February 11, 2019. *Id.*

On January 14, 2020, Sentementes was found not guilty by a jury on the charges stemming from the January 23, 2019 incident at Bethel Wine & Spirits. *Id.* at 4.

During the week of January 28, 2020, Sentementes filed a complaint with the Danbury Police Department about the theft of money from his Bank of America account. ECF No. 12 at 1. Detective Labonia informed him that it is almost impossible to have Bank of America release photographs of the ATM; that it would be difficult to obtain a subpoena; and that his complaint was on the bottom of his files. *Id.* Despite multiple letters to Detective Labonia with numbers for him to contact Bank of America and cancel his ATM card, Detective Labonia failed to respond or take any action to protect Sentementes's rights. *Id.* Sentementes represents that he could have posted bond if Detective Labonia had acted to fulfill his duties. *Id.*

On March 4, 2020, the case against Sentementes based on his arrest by Police Officer Emerson for violation of a protective order and threatening was *nolled*. ECF No. 1 at 4, 8.

---

[6] Sentementes appears to have written the wrong date of January 4, 2015, as he goes on to explain that the perjured testimony related to times that Police Officer Emerson had arrested him in January and February 2019. *Id.*

Sentementes attributes the state's decision to *nolle* the action to Police Officer Emerson being "caught testifying to a lie along with Corporal Zor and Sergeant Rost." *Id.* at 4.

## III.   DISCUSSION

Sentementes asserts the following causes of action: Breach of Fiduciary Duties; Violation of Rights; Kidnapping; Illegal Confinement; Cruel and Unusual Punishment; Risk of Injury; Slander; Defamation; Conspiracy; violation of the Clayton AntiTrust Act; violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"); Intentional Infliction of Emotional Distress; Malicious Prosecution; Violation of Public Act 107; Wire Fraud; Threatening; Financial Theft; and Negligence.[7]

Sentementes has indicated that he brings this action under 42 U.S.C. § 1983 for violation of his rights. As he alleges that he was arrested based on Bastone's false statements, the court construes his complaint as raising claims of Fourth Amendment false arrest, malicious prosecution, and false imprisonment. *See* ECF No. 1 at 12-13. Sentementes also appears to invoke Fourteenth Amendment violations based on deliberate indifference to a substantial risk of harm and Warden Martin's failure to provide him access to legal books at BCC. *Id.*

---

[7] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

### A.     42 U.S.C. § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citation omitted).

### 1.     Private Citizen Defendants

Sentementes appears to advance his claims under Section 1983 against all defendants, including private citizens, Bastone, Bank of America CEO John Doe, Liberty Mutual CEO Long, Director of Danbury Hospital John Doe,[8] and Daniel Sentementes.[9]

Because private parties are not generally liable under section 1983, the court must first consider whether he may bring his claims against the defendants who are clearly private individuals. *See United States v. International Brotherhood of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

---

[8]  Danbury Hospital "is a private institution[.]" *See Bolmer v. Oliveira*, 594 F.3d 134, 138 (2d Cir. 2010).

[9]  There is no indication that Sentementes asserts the allegations from his original complaint against the Danbury Defendants.

To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show that "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation and quotation omitted); *see also Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

Sementes's allegations raise no inference that any of the private citizen defendants engaged in conduct that could be considered fairly attributable to the state. To the extent Sementes refers to a conspiracy between the parties, his allegations are too conclusory to establish section 1983 liability on the basis of a conspiracy between the private defendants and state actor defendants.[10] *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.,* 62 F. Supp. 2d 927, 940 (E.D.N.Y.1999) (Allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of*

---

[10] "Private individuals who are not state actors, may be liable under Section 1983 if they have conspired . . . with state actors." *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F.Supp.2d 927, 940 (E.D.N.Y. 1999).

*Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.). A conspiracy claim under § 1983 requires the plaintiff to show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Sentementes's allegations fail to establish any of these elements.

Moreover, Bastone cannot be considered a state actor under 42 U.S.C. § 1983 based on her calling the police or seeking a protective order. *See Alvarez v. Peters*, No. 19-CV-6789 (EK), 2020 WL 1808901, at *4 (E.D.N.Y. Apr. 9, 2020); *Adebiyi v. City of New York*, No. 13-cv-480(WFK), 2014 WL 4922888, at *4 (E.D.N.Y. Sept. 30, 2014) (noting "provision of information to a police officer — even if that information is false or results in the officer taking affirmative action — is insufficient to constitute 'joint action' with state actors for purposes of § 1983.") (quotation marks and citations omitted); *Bravo v. Bexar Cty, Tex.,* No. 12–CV–4009, 2014 WL 1155302, at *6 (E.D.N.Y. Mar. 21, 2014) (explaining that allegations that private party filed a complaint to police does not show conspiracy or joint action with state actors otherwise all arrests would be subject to Section 1983 actions); *Vazquez v. Combs*, 04–cv–4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

Accordingly, the section 1983 claims against Bastone, Bank of America CEO John Doe, Liberty Mutual CEO Long, Director of Danbury Hospital John Doe, and Daniel Sentementes are dismissed as not plausible under 28 U.S.C. § 1915A.

### 2. Public Defender Leaf

A public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding or by virtue of his or her state law license. *Polk Cty. v. Dodson*, 454 U.S. 312, 319 n.9, 325 (1981). Both a public defender and private attorney may be held liable under section 1983 if they conspired with state actors. *See Tower v. Glover*, 467 U.S. 914, 920 (1984) (holding that a public defender acts under color of state law when conspiring with state actors). As discussed above, Sentementes's allegations fail to establish that Leaf conspired with any state actor to deprive Sentmentes of his rights or engaged in any conduct fairly attributable to the state. Thus, Sentementes's section 1983 claims against Leaf are dismissed as not plausible under 28 U.S.C. § 1915A.

### 3. Fourth Amendment False Arrest, False Imprisonment and Malicious Prosecution as to the State Actor Defendants

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To analyze section 1983 claims for false arrest, malicious prosecution, and false imprisonment, the federal court must "look to the law of the state in which the arrest and imprisonment occurred." *Marchand v. Hartman*, 395 F. Supp. 3d 202, 216 (D. Conn. 2019) (citation omitted.); *Shakur v. McNeil*, No. 3:20-CV-708 (VAB), 2020 WL 4818906, at *7 (D. Conn. Aug. 17, 2020) (noting "state law provides legal elements" for false arrest or malicious prosecution claims under section 1983).

Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009) (quoting *Green v. Donroe*, 186 Conn. 265, 267 (1982)). A plaintiff bringing a false arrest or false imprisonment claim under Connecticut law must have had the underlying charges terminated in his or her favor. *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (noting favorable termination is an element of a section 1983 claim "sounding in false imprisonment or false arrest" under Connecticut law).

For a claim of malicious prosecution under Connecticut law, the plaintiff must prove four elements: that "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)).

The favorable termination requirement "demands a 'show[ing] that the underlying criminal proceeding ended in a manner that *affirmatively indicates [the arrestee's] innocence.*'" *Allen v. Harkins*, No. 3:20CV964 (JAM), 2020 WL 4369125, at *2 (D. Conn. July 30, 2020) (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (emphasis added). Such an affirmative indication may be satisfied by a *nolle* "if a plaintiff can demonstrate that the criminal charges against [him] were discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him[.]" *Conquistador v. Zweibelson*, No. 3:17CV132 (KAD), 2019 WL 4758350, at *3 (D. Conn. Sept. 30, 2019) (citation and quotation omitted); *see also Spak v. Phillips*, 857 F.3d 458, 463-64 (2d Cir. 2017) ("[A]s a general matter a *nolle prosequi* constitutes

a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues. . . .
To be sure, courts and common law authorities state that a *nolle* does not constitute a favorable
termination when it is entered for reasons that are 'not indicative of the defendant's innocence.'
However, this qualifier is defined narrowly. It generally only includes *nolles* that are caused by
the defendant—either by his fleeing the jurisdiction to make himself unavailable for trial or
delaying a trial by means of fraud. It also includes any *nolle* entered in exchange for
consideration offered by the defendant (e.g., cooperation).") (internal citations omitted).

 Probable cause is a complete defense to a constitutional claim for false arrest, malicious
prosecution and false imprisonment. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014);
*Fernandez-Bravo v. Town of Manchester*, 711 F. App'x 5, 7 (2d Cir. 2017) (summary order)
(holding no claim for false arrest or malicious prosecution where arresting officer had probable
cause to arrest plaintiff). The plaintiff bears the "overall burden" to prove the absence of
probable cause. *See Marchand*, 395 F. Supp. 3d at 216 (citing *Russo v. City of Bridgeport*, 479
F.3d 196, 203 (2d Cir. 2007) and *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)); *see also*
*Bhatia v. Debek*, 287 Conn. 397, 410 (2008) ("Although want of probable cause is negative in
character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise,
that the defendant had no reasonable ground for instituting the  criminal proceeding.") (citation
and quotation omitted).

 Generally, probable cause to arrest exists when the officer has "knowledge or reasonably
trustworthy information of facts and circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be arrested has committed or is committing a
crime." *Weyant v. Okst*, 101 F.3d 845, 851 (2d Cir. 1996); *see also Walczyk v. Rio*, 496 F.3d 139,

156 (2d Cir. 2007); *see also Bhatia*, 287 Conn. at 410 (explaining in malicious prosecution context that under Connecticut law, "[p]robable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he has reasonable grounds for prosecuting an action."). An arresting officer only needs "probable cause [to make a lawful arrest], he need not also believe with certainty that the arrestee will be successfully prosecuted." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

An arrest made pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause. *Walczyk*, 496 F.3d at 155–56. A plaintiff may defeat that presumption by showing that the defendant officer "(1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause." *Id.* (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)) (internal quotation marks omitted); *see also Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993) (citing *Golino v. City of New Haven,* 950 F.2d 864, 870–71 (2d Cir. 1991)). "Recklessness may be inferred where the omitted information was clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (internal quotation marks and citations omitted).

### a.    Personal Involvement

As a preliminary matter, Sentementes has not alleged the personal involvement of most of the state actor defendants in connection with the events concerning his arrest. In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934

(2d Cir. 1977). With respect to supervisory officials, a plaintiff cannot sue a defendant for damages solely because of his supervisory position. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). He may recover damages against a supervisory official only by showing that the official was "personally involved" in the constitutional deprivation in one of five ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury.).

Sentementes has not alleged any facts about the personal involvement of Governor Lamont, First Selectmen John Doe, Bethel Police Chief John Doe, Bethel Police Officer Broad, Bethel Police Officer Christos, Bethel Police Officer Sergeant Christos, or Police Officer Dan Spinella. As Dispatcher Kavallines is only alleged to have passed Bastone's call through to the Bethel police department, Sentementes has not established her personal involvement in any violation of Sentementes's federal or constitutional rights. Accordingly, any section 1983 claims asserted against these defendants are dismissed as not plausible under 28 U.S.C. § 1915A.

As Sentementes has not alleged facts establishing that BCC Warden Martin, a state employee, had any involvement in his arrest or conduct giving rise to a potential Fourth Amendment violation, any Fourth Amendment claims against him are dismissed.

**b.      Emerson, Zor, and Rost**

Sentementes's complaint provides some facts (which are sparse) about Bethel Police Officer Emerson, Corporal Zor, and Sergeant Rost. Emerson allegedly arrested him for violation of a protective order and threatening, and he allegedly provided false testimony about how many times he had met Sentementes. Corporal Zor and Sergeant Rost also allegedly provided testimony that was false (although he has not indicated the nature of that testimony).

Sentementes has not alleged the personal involvement of any specific defendant from the Bethel Police Department in his arrest on February 11, 2019, for assault on a public safety officer, among other charges, and he has not alleged that this arrest lacked probable cause.

The attachments to the complaint show that the Corporal Zor applied for a warrant for Sentementes's arrest for Assault of a Public Safety Officer and Operating a Motor Vehicle with a Suspended License that was signed by a superior court judge on February 7, 2019. ECF No. 1 at 61-61. The affidavit application describes how Sentementes had threatened the Bethel Police Officers at the Bethel Wine & Spirits Liquor Store with a physical alteration and "suicide by cop," and spit at Corporal Zor, Police Officer Emerson, and the emergency responders. *Id.* at 62-63. It also states that a search showed that Sentementes' license was suspended. *Id.*

If (as it appears) Sentementes was arrested on February 11, 2019 pursuant to an arrest warrant authorized by a judicial officer, Sentementes can defeat the presumption of the arrest's reasonableness only by showing that the officer (1) 'knowingly and deliberately, or with a

reckless disregard of the truth,' procured the warrant, (2) based on 'false statements or material omissions,' that (3) 'were necessary to the finding of probable cause.'" *Ganek*, 874 F.3d at 81. Sentmentes's allegations fail to establish, or even suggest, he was arrested on February 11, 2019, absent probable cause. *See Cole v. Gonce*, No. 3:19-CV-978 (VAB), 2020 WL 1640132, at *7 (D. Conn. April 2, 2020) (dismissing false arrest and malicious prosecution claims because absence of probable cause was not clearly alleged). Accordingly, Sentmentes has not alleged plausible Fourth Amendment claims based on his February 11, 2019 arrest.

Relevant to his arrest for violation of the protective order by Police Officer Emerson, Sentmentes's complaint indicates the case was *nolled* or "dropped" on March 4, 2020, due to the false testimony of Bethel Police Officer Emerson about how many times he had met Sentmentes, and other unspecified testimony from Corporal Zor and Sergeant Rost. These allegations are insufficient to establish that the underlying criminal proceeding ended in a manner that "affirmatively" indicates Sentmentes's innocence and that the criminal proceedings were therefore terminated in his favor. *See Lanning*, 908 F.3d at 28 (holding that a vague allegation that charges were dismissed sometime after a jury trial – "without specifying how or on what grounds" – is insufficient to meet this affirmative standard). Moreover, Sentmentes has not alleged that he was arrested for violation of a protective order without probable cause, and the complaint does not otherwise suggest the absence of probable cause.[11]

---

[11] The complaint attaches the arraignment report for a warrantless arrest on January 25, 2019, which reflects that the Bethel Police acted on information from Andrew Sentmentes that his father had threatened to kill certain individuals, naming Bastone specifically. The arraignment report states further that Bastone had contacted the Bethel Police Department about fearing for her life and provided a written statement about past violence against her by Sentmentes; that Bastone had obtained a restraining order to prevent Sentmentes from threatening her; and that Bastone was frightened because Sentmentes had gone to the Bethel Wine and Spirits owned by Bastone. ECF No. 1 at 39.

Accordingly, the court concludes that Sentementes's complaint fails to allege plausible Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution.

### 4.        Fourteenth Amendment

Sentementes asserts that each defendant subjected him to cruel and unusual punishment. He further alleges a claim that he was subjected to a serious risk of injury, including illegal confinement, as a result of the defendants' conduct. Although these claims are not at all clear, Sentementes appears to invoke the standards of a deliberate indifference claim under the Fourteenth Amendment.

A claim by a pretrial detainee asserting indifference to a risk of harm is governed by the Fourteenth Amendment's Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The Eighth Amendment's protection from cruel and unusual punishment applies to sentenced prisoners. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).

Sentementes's complaint contains no factual allegation suggesting a Fourteenth Amendment claim based on conduct by any defendant prior to his incarceration at BCC. *See Shakir v. Stankye*, 805 Fed. App'x 35, 41 (2d Cir. 2020) (summary order) (explaining that even pre-arraignment conditions claim against police officer should be analyzed under Fourteenth Amendment). With respect to his confinement at BCC, Sentementes has only alleged that Warden Martin failed to provide him with access to legal books. To the extent he seeks to raise Fourteenth Amendment claims stemming from conduct prior to or during his incarceration at BCC, such claims are factually and legally distinct from the complaint's allegations concerning

his arrests (which form the majority of Sentementes's complaint) that suggest Sentementes asserts claims of Fourth Amendment violation.[12]

Rule 20(a) of the Federal Rules of Civil Procedure allows for the joinder of defendants in one action if "any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions and occurrences[,]" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). As the Second Circuit has observed in the Rule 13 context,[13] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). Under Rule 21 of the Federal Rules of Civil Procedure, the court may add a party "at any time, on just terms[.]" Fed. R. Civ. P. 21. It provides that a court "may sever any claim against a

---

[12]  To establish a constitutional violation under the Eighth or Fourteenth Amendment based upon inhumane conditions, a plaintiff must demonstrate, that the deprivation was "sufficiently serious." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *Rogers v. Faucher*, No. 3:18-CV-1809 (JCH), 2019 WL 1083690, at *4 (D. Conn. Mar. 7, 2019) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). A pretrial detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety." *Rogers v. Faucher*, No 3:18-CV-1809 (JCH), 2019 WL 1083690, at *4 (quoting *Darnell*, 849 F.3d at 35).

[13]  "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

party" pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

Because Fourteenth Amendment claims concerning his conditions prior to his incarceration at BCC or during his incarceration at BCC present different legal standards with different factual proofs involving different witnesses from Fourth Amendment claims arising from his arrests, such Fourteenth Amendment claims should not proceed in this action and will be severed and dismissed without prejudice.[14] *See* Fed. R. Civ. P. 21. Sentementes may proceed with such claims in a separate action.

### 6.    Section 1983 Claims against Bethel

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal citation omitted); *see Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). An underlying constitutional violation is a

---

[14]  In this severing order, the court does not address the merits of these claims.

required predicate for municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because Sentementes has failed to allege an underlying constitutional violation that could be plausibly asserted against the Town of Bethel, any section 1983 claim asserted against the Town of Bethel in this action must be dismissed without prejudice.

### 7.    Claims Against Danbury Defendants

Sentementes asserts claims against the Danbury Defendants based on the failure of the Danbury Police, specifically Detective Labonia, to act on his complaint of theft of money from his Bank of America account. However, Sentementes has no freestanding constitutional right to a police investigation. *See Price v. City of New York*, No. 15 CIV. 5871 (KPF), 2018 WL 3117507, at *21 (S.D.N.Y. June 25, 2018) ("[T]o the extent that Plaintiff asserts a freestanding constitutional right [under the Fourteenth Amendment] to have her assault complaint investigated, she fails to state a claim for relief. Generally speaking, crime victims do not have a stand-alone constitutional right to have officers investigate their complaints."); *Troy* v. *City of New York*, No. 13 Civ. 5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) ("It is well established that '[t]here is . . . no constitutional right to an investigation by government officials.' This is because 'the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion,' and individuals accordingly have no 'legitimate claim of entitlement' to a police investigation.") (internal citations omitted), *aff'd*, 614 Fed. App'x. 32 (2d Cir. 2015) (summary order). Accordingly, Sentementes's allegations against the Danbury Defendants fail to allege a plausible constitutional violation under 42 U.S.C. § 1983. These claims are dismissed under 28 U.S.C. § 1915A.

21

### B.    Clayton Antitrust Act and Civil RICO

Sentementes also asserts violations of the Clayton Antitrust Act and civil RICO. ECF No.

1 at 18. Because he fails to plead any facts that could plausibly constitute a prima facie federal

antitrust or civil RICO claim, these claims are dismissed without prejudice.

### a.    The Clayton Act

"Section 4 of the Clayton Act establishes a private right of action for violation of federal

antitrust laws, permitting 'any person who shall be injured in his business or property by reason

of anything forbidden in the antitrust laws' to sue in federal court and to recover treble damages,

costs, and attorney's fees." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d Cir.

2019) (citing 15 U.S.C. § 15(a)). A plaintiff, like Sentementes, who seeks damages under

Section 4 of the Clayton Act must demonstrate antitrust standing. *See id.* ("the purpose of the

Clayton Act's private right of action is not 'to provide a remedy in damages for all injuries that

might conceivably be traced to an antitrust violation,' but only for injuries 'of the type that the

antitrust statute was intended to forestall.'") (citing *Associated Gen. Contractors of California,*

*Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540 (1983)).

"To satisfy the antitrust standing requirement, a private antitrust plaintiff must

demonstrate that (1) it has suffered 'a special kind of antitrust injury,' and (2) it is an 'efficient

enforcer' of the antitrust laws." *Eastman Kodak Co.*, 936 F.3d at 94 (citation omitted). The

Second Circuit "employ[s] a three-step process for determining whether a plaintiff has

sufficiently alleged antitrust injury." *Id.* First, "the party asserting that it has been injured by an

illegal anticompetitive practice must identify[] the practice complained of and the reasons such a

practice is or might be anticompetitive." *Id.* (internal quotation marks omitted). Second, the court

must "consider how the practice identified by the plaintiff put the plaintiff in a worse position."

*Id.* (internal quotation marks omitted). Third, the court must "compar[e] the anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges." *Id.* (internal quotation marks omitted). Where, as here, a plaintiff does not allege that it "participate[s] in the defendants' market[,]" *id.*, a plaintiff may show an actual injury if that injury is "inextricably intertwined with the injury the conspirators sought to inflict." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982).

Sentementes's pleadings do not meet any of these elements. Nor does he plead any injury "inextricably intertwined" with any injury that could plausibly be caused by any alleged antitrust violation. Instead, Sentementes states that he "has a financial investment into Bastone Investments LLC . . . [,]" and that "the Bethel police contacted the liquor commissioner and informed that the plaintiff was a convicted felon to try and sabotage his financial investments[.]" ECF No. 1 at 18. He further alleges that "Pasqualina Bastone['s intention [was] a hostile takeover, [and that] all of the other defendants further their causes knowingly, willfully and recklessly causing further irreparable harm and injury." *Id.* None of these allegations, taken as true, are sufficient to establish "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also* William Holmes and Melissa Mangiaracina, *Standing–Antitrust Injury*, Antitrust Law Handbook, § 9:6 (injuries that the "antitrust laws were meant to prevent [include, for example,] a business's lost profits from a reduced ability to compete, or a consumer's injury from having to pay an artificially inflated price").

Likewise, Sentementes fails to plead sufficient facts to meet the "efficient enforcer"

requirement for private antitrust actions. *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290-91 (2d Cir.2006) ("Even if a plaintiff adequately alleges an antitrust injury, it may still be held to lack standing. Other factors relevant to standing—sometimes referred to as the "efficient enforcer" factors—may indicate that a party who states an antitrust injury is nevertheless not a proper antitrust plaintiff. These include: (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries."). Specifically, Sentementes fails to plead facts that could plausibly satisfy any of these elements. Indeed, he does not even allege an anticompetitive effect related to Bastone Investments LLC or the alleged actions of Ms. Bastone or the Bethel police department.

### b.      Civil RICO

"To state a claim for damages under RICO a plaintiff has two pleading burdens. First, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 [], the substantive RICO statute." *Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990) (internal citations omitted). To plead a substantive RICO violation, a plaintiff must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (citing 18 U.S.C. § 1962(a)-(c)). Second, a plaintiff must also allege that he was "'injured in his business or property by reason of a violation of section 1962.'" *Id.* (quoting 18

U.S.C. § 1964(c)).

Nowhere does Sentementes plead any facts that could plausibly meet any element of a civil RICO claim (or a criminal RICO claim, as he also appears to allege, though Sentementes alleges no basis for his authority to institute any criminal action against the defendants). ECF No. 1 at 18. Instead, Sentementes merely alleges, in a conclusory manner, that

> all of the combined actions became organized by the end of all their means of actions one learned about the others actions and each stayed their course knowingly, willfully and with reckless disregard to the plaintiff to conjunctively cause this cause of action [for civil RICO] whereas their crimes can now subject them criminal R.I.C.O.

*Id.* This allegation falls far short of Sentementes's pleading burdens, and he therefore fails to allege a plausible civil RICO claim.

Because Sentementes fails to allege plausible federal antitrust or civil RICO claims, these claims are dismissed under 28 U.S.C. § 1915A.

### D.    Remaining State Law Claims

The court will not consider the plausibility of Sentementes' remaining state law claims because the court has determined that the federal claims raised by the complaint should be dismissed.[15] Thus, the court declines to exercise supplemental jurisdiction over the state law

---

[15] The court notes that Sentementes is asserting kidnapping and threatening as civil claims. Kidnapping and threatening are criminal offenses under the Connecticut General Statutes. The Connecticut Supreme Court has held that, unless private enforcement is expressly stated in a statute, there is a presumption in Connecticut that private enforcement does not exist. *See Provencher v. Town of Enfield*, 284 Conn. 772, 777 (2007). The burden is on the plaintiff to overcome that presumption and show that the statute creates an implied right of action. *Id.* at 777–78. Sentementes also alleges that Public Act 107 "specifically states that [he] cannot be denied his right to eat when his assets fall under a restraining order." If Sentementes reasserts this claim, he should cite to the specific statutory or legal provision supporting it.

claims, which must be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims, it may decline to exercise supplemental jurisdiction over supplemental state law claims).

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Implead [ECF No. 12] is GRANTED and the complaint is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A.

The court affords Sentementes one opportunity to amend his complaint, within 30 days of this order, if he can allege facts to correct the deficiencies identified in this Order. Any amended complaint should include specific factual allegations about the involvement of each named defendant against whom Sentementes seeks damages. If Sentementes chooses to name the Town of Bethel as a defendant, the amended complaint should allege facts to show how any violation of his rights was caused by a specific municipal policy, practice, or custom. Sentementes should also review Rule 8 of the Federal Rules of Civil Procedure, which requires that the complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8. Any amended complaint will completely replace the prior complaint in the action, and no portion of any prior complaint shall be incorporated into his amended complaint by reference. **Failure to submit an amended complaint within this time period will result in the court closing this case.**

Any Fourteenth Amendment claims are **SEVERED and DISMISSED** without prejudice. *See* Fed. R. Civ. P. 21. Sentementes may pursue these claims in separate lawsuits.

The court declines to exercise jurisdiction over Sentementes's state law claims. These claims are dismissed without prejudice. *See* Fed. R. Civ. P. 21.

/s/
Michael P. Shea
United States District Judge

**SO ORDERED** this 9th day of October 2020, at Hartford, Connecticut.